## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**MARVIN GARRETT,**

      **Movant,**

**v.**                          **Case No. 2:16-cv-05728**
                                        **Case No. 2:12-cr-00030**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court is the Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 191), which was filed by Movant's court-appointed counsel on June 26, 2016, and the Movant's *pro se* Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 204), which was filed on October 18, 2016.

### PROCEDURAL HISTORY

**A.     Defendant's criminal proceedings and direct appeals.**

On October 3, 2012, following a two-day jury trial, Defendant was convicted of one count of distribution of a quantity of cocaine base, also known as "crack," in violation of

21 U.S.C. § 841(a)(1), as set forth in a Second Superseding Indictment (ECF No. 69).[1] Defendant was represented at trial by court-appointed counsel, John H. Tinney, Jr. ("Tinney").

The evidence at trial established that, on January 18, 2012, Defendants sold .37 grams of cocaine base to a confidential informant, Angel Cummings ("Cummings"), who was working for the Metropolitan Drug Enforcement Network ("MDENT"). As noted by the respondent, this evidence was based upon the testimony of two MDENT officers, Detectives Kevin Allen and J.A. Hackney, Staci Taylor (a chemist with the West Virginia State Police Crime Laboratory), and Cummings, as well as photographs, recordings, and the cocaine base itself. (ECF No. 206 at 3). Cummings identified one of her drug dealers as a man living on Temple Street on Charleston's west side, who she knew as "Neno." She stated that she routinely purchased crack from Neno by calling his cell phone, telling him the amount of crack she wanted to purchase, and setting up a location to conduct an in-person transaction. She stated that Neno would personally answer the phone and personally showed up to make the sales.

Due to the prior familiarity of Allen and other MDENT officers with an alleged drug dealer named Marvin Garrett, and after confirming that Garrett lived at 1020 Temple Street, Allen showed a picture of Garrett to Cummings, who immediately identified him as Neno. Thus, Allen proceeded to have Cummings set up a controlled buy of $100 worth of crack from Neno on January 18, 2012. Cummings called Neno and agreed to meet him outside the Kickback Lounge on Charleston's west side. As set forth in the trial record, Cummings testified about the details of the drug transaction, which were further

---

[1] The Second Superseding Indictment contained eight substantive counts and a forfeiture count. However, prior to trial, the government filed a notice of dismissal of all of the counts except for the crack distribution count contained in Count Eight, which is the offense of conviction. (ECF No. 81).

confirmed by an audio recording.  At the time of the transaction, Allen and Hackney were located in a vehicle approximately 15 feet away.  Cummings, Allen, and Hackney all identified Defendant in court as the distributor of the drugs in the January 18, 2012 transaction.  Staci Taylor confirmed that the substance obtained in the transaction was crack cocaine.

On October 17, 2012, Defendant filed a Motion for a New Trial asserting a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), in which he contended that the United States of America ("the government") failed to disclose details of Cummings' history of drug abuse and mental health conditions. Following a hearing, the district court denied the motion by Memorandum Opinion and Order entered on October 21, 2013.  While the district court found that the government improperly suppressed potentially favorable information about Cummings' history of drug abuse, it further concluded that there was no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" and, thus, it was immaterial.  (ECF No. 128 at 17, 19-20) (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).  The court further found that the defense was armed at trial with abundant impeachment material with which to challenge Cummings' credibility, and that there was other sufficient evidence of Defendant's guilt.  (*Id.* at 17).

On January 13, 2014, Defendant was sentenced to 262 months in prison, a six-year term of supervised release, and a $100 special assessment.  (ECF No. 142).  Defendant was subject to an enhanced statutory maximum penalty of 30 years because the government filed an information, pursuant to 21 U.S.C. § 851, establishing that Defendant

had a prior qualifying felony drug conviction.[2]   Defendant's sentence also included an enhancement under section 4B1.1 of the United States Sentencing Guidelines for being a career offender, which increased his guideline level from 20 to 34.[3]   The district court entered Defendant's Judgment on February 11, 2014.  (ECF No. 142).  Defendant filed a timely notice of appeal that same day.  (ECF No. 145).

In his direct appeal, Defendant asserted that the district court erred in denying his motion for a new trial based upon the government's failure to disclose Cummings' drug abuse and mental health history.  The Fourth Circuit affirmed the district court's ruling on June 10, 2015.  *United States v. Garrett*, 606 F. App'x 71 (4th Cir. 2015).  Defendant's petition for a writ of certiorari was denied on October 19, 2015.  *Garrett v. United States*, 136 S. Ct. 371 (2015).  Thus, his Judgment became final on that date.

---

[2]  According to his Presentence Investigation Report ("PSR"), Defendant had a 1999 conviction in this federal court for possession with intent to distribute cocaine base.  Defendant's amended motion does not challenge the section 851 enhancement.

[3]  Section 4B1.1 of the United States Sentencing Guidelines ("USSG") provides as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

UNITED STATES SENTENCING GUIDELINES MANUAL § 4B1.1(a) (U.S. SENTENCING COMM'N 2011).  At the time of Defendant's sentencing, section 4B1.2(a) of the Guidelines defined a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that – (1) has an element the use, attempted use, or threatened use of physical force against the person of another ["the force clause"], or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives ["enumerated offenses"], or otherwise involves conduct that presents a serious potential risk of physical injury to another." ["the residual clause"] U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a) (U.S. SENTENCING COMM'N 2011) [emphasis added].  Application Note 1 in the guideline commentary includes additional enumerated offenses that qualify as "crimes of violence," none of which are relevant here.  *Id*. at cmt. n.1.  Section 4B1.2(b) defines a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(b) (U.S. SENTENCING COMM'N 2011).  In addition to his 1999 controlled substance conviction, Defendant's PSR indicates that, among other previous convictions, he had a 2003 federal conviction for escape, and a 2008 conviction on two counts of wanton endangerment in the Circuit Court of Kanawha County, West Virginia.

**B.** **Defendant's motions for collateral review and related briefing.**

On June 26, 2015, the Supreme Court decided *United States v. Johnson*, 135 S. Ct. 2551 (2015) ("*Johnson*"), holding that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague, and further finding that imposition of an increased sentence thereunder violates due process. On April 18, 2016, the Supreme Court decided *Welch v. United States*, 136 S. Ct. 1257 (2016), in which the Court determined that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. On May 11, 2016, Defendant filed a *pro se* motion seeking relief under *Johnson/Welch* and requesting appointment of counsel. (ECF No. 188).

On June 14, 2016, attorney David O. Schles was appointed to represent Defendant for the purpose of determining whether he is entitled to any relief under *Johnson*. (ECF No. 189). Defendant, by counsel, filed the initial Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 herein on June 26, 2016. (ECF No. 191). The motion asserts in pertinent part as follows:

> [I]n light of the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), Mr. Garrett asserts he cannot now be deemed a career offender because neither federal escape from custody nor West Virginia wanton endangerment can be considered a "crime of violence" under the *Johnson* holding. [Footnote omitted].
>
> As stated above, it is not clear which of Mr. Garrett's prior convictions were found to qualify as "crimes of violence" under the career offender provision. Clearly, Mr. Garrett had one prior conviction that qualifies as [a] controlled substance offense under the career offender guideline. The Court's application of the career offender enhancement subjected Mr. Garrett to a Sentencing Guidelines range of 262-327 months' imprisonment (corresponding to offense level 34 and criminal history category VI). Without a career finding, Mr. Garrett would have had a total offense level of 18 and been in criminal history category VI. [Footnote omitted]. Thus, without application of the career offender provision, Mr. Garrett's Sentencing Guidelines range would have been 57-71 months.

5

(ECF No. 191 at 4).  Defendant's motion further asserts that, absent the residual clause contained in USSG § 4B1.2, neither a "walk away" escape, or wanton endangerment under West Virginia law, can be considered "crimes of violence" because they are not enumerated offenses and do not have an element of violent physical force sufficient to meet the force clause therein.

On October 18, 2016, the plaintiff, acting *pro se*, filed a second Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, which was construed as a Motion to Amend his first section 2255 motion (ECF No. 204).  The Motion to Amend was granted on November 4, 2016, and the undersigned will hereinafter collectively refer to the documents in ECF Nos. 191 and 204 as Defendant's amended section 2255 motion.

The amended section 2255 motion raises four claims of ineffective assistance of counsel, as follows:

1.  Counsel John H. Tinney [Jr.] ["Tinney"] failed to strike juror #2 Alyssia Moorman during voir dire process.  Defendant informed counsel prior to jury selection that Miss Moorman failed to inform courts that she in fact knew of Defendant prior to that time thru a personal relationship.  Counsel failed to bring this knowledge of admission to court's attention. #2 juror Alyssia Moorman participated in the entirety of my trial depriving me of an impartial/fair trial, counsel was fully aware of Defendant's relationship with juror #2.

2.  Counsel failed to properly raise *Brady* issue at trial and during post-trial motions.

3.  Counsel failed to contest career offender enhancement at sentencing. Prior drug conviction was over 10 yrs. old.

4.  Counsel failed to call "expert witness" on my behalf to contest testimony.  Denied Defendant right to testify in own behalf.

(ECF No. 204 at 4-8).

On January 9, 2017, the government filed a Response to Defendant's amended section 2255 motion (ECF No. 206). The government contends that Defendant's challenge to his sentence is procedurally defaulted because he did not address it in his direct appeal. The government further asserts that *Johnson* is not retroactively applicable on collateral review to a challenge of a Guideline sentence. In the alternative, the government's Response asserts that Defendant's wanton endangerment conviction is a crime of violence under the force clause and, thus, that conviction, coupled with his prior controlled substance conviction, qualifies him as a career offender.

Concerning Defendant's ineffective assistance of counsel claims, the government asserts that Defendant has not met his burden of proving that Tinney provided ineffective assistance in accordance with the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 206 at 22-27). Specifically, the government contends that Defendant's claim that Tinney did not disclose to the court that Defendant had a "personal relationship" with one of his jurors, and further failed to strike that juror, are unsupported by any facts whatsoever. (*Id.* at 24).

Additionally, the government states that Defendant did not describe or explain the supposed *Brady* violation asserted in his amended motion and has provided no specific argument or evidence concerning how Tinney's performance with respect to that issue was allegedly unreasonable. The government's Response adds, "[i]f defendant intends to reference the *Brady* issue with respect to the confidential informant in this case, that issue has already been fully litigated and decided by the district court and Fourth Circuit." Thus, the government contends that Defendant is not permitted to re-litigate that issue on collateral review. (*Id.* at 24-25).

Turning to Defendant's claim concerning the career offender enhancement, the government's Response states:

> The record establishes that the enhancement properly applies in defendant's case because prior to his conviction in this case, he had sustained prior convictions for possession with intent to distribute cocaine (PSR ¶ 44), which is a controlled substance offense under USSG 4B1.2(b), and for wanton endangerment with a firearm (PSR ¶ 47) which, as discussed above, is a crime of violence under USSG 4B1.2(a)(1). Defendant suggests that his prior drug conviction was too old to count as a predicate, but the 1999 conviction and 70-month sentence of incarceration was well within the applicable 15-year time period set forth in USSG 4A1.2(e)(1). Because the career offender enhancement properly applied to defendant, his counsel was not ineffective in not contesting the enhancement, and defendant was not prejudiced in any way.

(*Id.* at 25).

Concerning Defendant's claim that his counsel failed to call an "expert witness," the government asserts that Defendant failed to identify the type of expert witness he believes should have been called, or what element of Defendant's guilt such expert would have refuted. The Response further asserts, "[i]f defendant is referring to an expert witness to testify regarding the confidential informant's drug use, this is an issue that was raised by his counsel in post-trial litigation and was specifically rejected by the district court." (*Id.* at 26) (citing ECF No. 115 at 16).

Finally, regarding Tinney's failure to permit Defendant to testify, the government contends that "outside of his bare assertion, he has not shown that he was denied that right or that he was not advised of his right to testify." (*Id.* at 26). Furthermore, the government asserts that, even if defendant was somehow misadvised about the right to testify, he was not prejudiced thereby because there was overwhelming evidence of his guilt and "his own biased testimony" likely would not have altered the outcome of the proceedings. (*Id.*)

The government asserts that Tinney vigorously advocated for Defendant throughout the case, achieved the dismissal of all but one of the counts against him, and filed multiple motions *in limine*, motions for judgment of acquittal, and the motion for a new trial. At sentencing, Tinney also argued for a within guideline sentence, without the career offender enhancement, and objected to the inclusion of certain relevant conduct. While the government contends that Tinney's conduct did not fall below an objective standard of reasonableness, it further contends that Defendant has not demonstrated the requisite prejudice in order to sustain his claims of ineffective assistance of counsel. (*Id.* at 26-27).

After several changes in counsel, and resulting extensions of time, Defendant, by counsel, Tim C. Carrico, filed a Reply on March 5, 2018. (ECF No. 227). The Reply expands on each of Defendant's claims of ineffective assistance of counsel. Specifically, Defendant now contends that he has known juror #2 (Alyssia Moorman) since he was about ten years old and that the two engaged in an intimate relationship in late 2010-early 2011. Defendant further claims that the relationship dissolved around March of 2011, and Moorman allegedly threatened to "get back" at him "for what he had done to her." (ECF No. 227 at 1).

According to the Reply, later that summer, Defendant saw Moorman at a local bar and asked her if she would be interested in seeing him again. (*Id.* at 1-2). Moorman allegedly became upset and told Defendant he was "being disrespectful." (*Id.*) Defendant further claims that he did not see Moorman again until the trial. (*Id.* at 2). At that time, he allegedly made multiple requests to Tinney to strike Moorman, either for cause or by a preemptory challenge, but Tinney allegedly refused to do so. (*Id.*) Defendant believes this refusal was because Moorman was African American. (*Id.*) Tinney allegedly stated

that he would bring the issue up with the court at a later time, but also failed to do so. (*Id.*) Defendant now contends that Moorman "had extreme prejudices against him" and that the failure to strike her denied him a fair trial and an impartial jury. (*Id.*)

Regarding the *Brady* issue, Defendant's Reply simply states, in a conclusory manner, that both his trial and appellate counsel did not effectively raise the issue at trial or on appeal. (*Id.* at 2). The Reply also wholly fails to address Ground Three of Defendant's amended motion concerning the failure to challenge the career offender enhancement.

With respect to Defendant's expert witness claim contained in Ground Four, the Reply asserts, for the first time, that Tinney did not effectively cross-examine Detective Allen concerning his opinion that Defendant's voice was on the recorded phone call on January 18, 2012. Defendant further claims that Tinney improperly elicited "voice recognition opinion testimony," which linked Defendant to the accompanying phone number for the call setting up the controlled buy. (ECF No. 227 at 3). Defendant further claims that Tinney should have engaged his own "voice recognition" expert to challenge that testimony, and an expert to "triangulate" the position of Defendant's cell phones, which, he claims, would have demonstrated that he was not involved in the controlled buy on January 18, 2012. (*Id.* at 5).

Defendant further claims, for the first time, that Detective Allen's testimony improperly introduced character evidence of other crimes, wrongs, or acts, by revealing that Defendant had previously been incarcerated and that drug evidence had recently been recovered from Defendant's house. (*Id.* at 3-4). The Reply further states:

> Counsel inquired of Detective Allen on cross-examination if he had ever linked the aforementioned number or account to the movant. Detective Allen then explained to the jury that he did. He told the jury that he had

listened to approximately **200 hours** of Movant Garrett's **jail** phone calls and that the voice on these **jail** phone calls was identical to the voice on the recorded January 18, 2012 phone call (Emphasis in original).

Movant Garrett believes counsel's question to Detective Allen during cross examination allowed him through improper voice recognition opinion testimony to link him to the voice on the recorded January 18, 2012 phone call. But more importantly, the question allowed Detective Allen to inform the jury that the Movant Garrett was in **jail** on another matter of sufficient duration to make **200 hours** of phones calls. Moreover, Detective Allen informed the jury that the movant called a person by the name of Alexis Mack multiple times from **prison**, which was the number – or which was the name that cell phone was registered to. (Emphasis).

In the alternative, Movant Garrett believes his counsel was ineffective by not moving for a mistrial, to strike, or for a limiting instruction regarding the improper 404(b) character testimony that he made calls while be[ing] housed in **jail** and in **prison**. Movant Garrett was clearly unfairly prejudiced by this improper use of 404(b) evidence without any instructions from the court.

Movant Garrett believes counsel was ineffective by not hiring or consulting with a voice recognition expert to challenge the admissibility or weight to be given to Detective Allen's voice recognition opinion. He believes that his defense was prejudiced by this failure.

The prejudice caused by the aforementioned character evidence was amplified by the fact that additional improper character evidence had been previously introduced into the record through Detective Allen's cross examination.

(*Id.* at 3-4).

### C.    **Evidentiary Hearing.**

On September 20, 2019, the undersigned conducted an evidentiary hearing, limited to the ineffective assistance of counsel claim concerning juror # 2, during which Defendant and Tinney testified. After recounting that he had known juror # 2, Alyssia Moorman (hereinafter "Moorman"), most of his life, Defendant stated that he began an intimate relationship with her in late 2010. However, sometime in 2011, Defendant ended

the relationship and claims that Moorman became vindictive and threatened that she would "pay him back."

Defendant testified that, during jury selection, he recognized Moorman, advised Tinney about their relationship, and stated that he was uncomfortable with her being on the jury. Tinney allegedly stated that Moorman was the only African American and was "his best chance." Defendant claims that he addressed his concerns about Moorman with Tinney more than twice during the proceedings and continued to raise the issue after trial. According to Defendant, Tinney told him that he had informed the court, but no one had gotten back to him. The issue concerning Moorman's presence on the jury was not addressed in Defendant's post-trial motion or in his sentencing memorandum. It was not addressed at sentencing or on appeal.

Tinney testified that he did not recall Defendant raising concerns about Moorman during jury selection and repeatedly stated that Defendant first addressed that issue after the guilty verdict. He testified that, had Defendant brought the issue to his attention during jury selection, he would have asked for a sidebar, requested individual voir dire, and made a motion to strike for cause. He did not recall Defendant asking for Moorman to be stricken and testified that he was not aware of any basis to challenge her participation.

However, Tinney further testified that, as a result of Defendant's post-verdict disclosure, he retained an investigator, Herb Gardner, who attempted to substantiate Defendant's account of his relationship with Moorman, but he was unable to corroborate Defendant's statements. Thus, Tinney did not raise the issue with the district court, and he did not represent Defendant on appeal. Although he met with Defendant in preparation for the post-conviction motion and sentencing hearing, Tinney could not

recall specific discussions with Defendant about the Moorman issue or when those discussions occurred in the sequence of the post-trial proceedings. Tinney did not believe that they had any written communications about the issue and could not locate his original file or notes.

## ANALYSIS

### A.    Defendant's *Johnson* claim lacks merit.

The court can quickly dispose of Defendant's claim that he is entitled to relief under the Supreme Court's decision in *Johnson*. Defendant's counseled motion (ECF No. 191) argues that the decision in *Johnson* also invalidates the residual clause contained in USSG § 4B1.2(a)(2), which is used to determine whether a prior conviction is a "crime of violence" for the purpose of the career offender enhancement. However, that issue has been foreclosed by the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017).

In *Beckles*, the Supreme Court examined the constitutionality of the career offender guideline's residual clause in light of *Johnson* and determined that it was not unconstitutionally vague, explaining that "[u]nlike the ACCA . . . the advisory Guidelines do not fix the permissible range of sentences." *Id.* at 892. Instead, the Court found that the Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* Thus, the Court found that "the Guidelines are not subject to a vagueness challenge under the Due Process clause" and "[t]he residual clause in § 4B1.2(a)(2) therefore is not void for vagueness." *Id.*

In light of *Beckles*, any argument that the holding in *Johnson* also invalidates the residual clause of the career offender guideline is without merit. *See also United States v. Brown*, 868 F.3d 297 (4th Cir. Aug. 21, 2017) (*Beckles* forecloses argument that

*Johnson* invalidates all residual clauses with wording similar to ACCA's invalidated residual clause). Because *Johnson* is not applicable to Defendant's case, he has not demonstrated that the application of the career offender enhancement to his sentence resulted in a denial of due process. Thus, he is not entitled to any collateral relief under section 2255 on this basis. Therefore, the motion contained in ECF No. 191 must be denied.[4]

### B.    Defendant's ineffective assistance claim concerning juror #2.

In Ground One of his amended section 2255 motion (ECF No. 204 at 4), and as further addressed in his Reply (ECF No. 227), Defendant asserts that Tinney provided ineffective assistance of counsel because he failed to challenge Moorman's presence on the jury after allegedly learning of Defendant's prior relationship with her. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court adopted a two-pronged test to demonstrate a violation of the right to effective assistance of counsel guaranteed by the Sixth Amendment. The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. *Id.* at 687-91. There is a strong presumption that the conduct of counsel was within the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.* at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

---

[4] Because Defendant is not entitled to any substantive relief under *Johnson*, the undersigned finds it unnecessary to address the procedural default argument contained in the government's Response (ECF No. 206).

*Id.* at 690.   This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).   "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 88.  The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The trial court record demonstrates that Moorman did not volunteer any information about a prior relationship with Defendant during the voir dire process, and that Defendant did not move to strike her during jury selection.   Thus, Moorman was a member of Defendant's jury.   The trial court records further demonstrate that neither Defendant, nor Tinney, raised any issues concerning Moorman's service on the jury at any point during the trial, or during the post-trial motion and sentencing phases.

However, the undersigned found Tinney's testimony at the September 20, 2019 evidentiary hearing to be credible regarding the fact that he was not made aware of the issues concerning Moorman's service on Defendant's jury until after the verdict had been rendered, and that he undertook an investigation to substantiate a basis to challenge her participation on the jury, but could not do so.   Based upon this testimony, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not established that Tinney's conduct in this regard fell below an objective standard of reasonableness. Consequently, Defendant cannot satisfy the first prong of *Strickland* and has not demonstrated a violation of his Sixth Amendment rights.   Therefore, the undersigned

further proposes that the presiding District Judge **FIND** that Defendant is not entitled to any collateral relief on Ground One of his amended section 2255 motion.

### C.      Defendant's *Brady* claim.

In Ground Two of his amended section 2255 motion (ECF No. 204 at 5), Defendant asserts that Tinney also provided ineffective assistance of counsel because he failed to properly raise a *Brady* claim at trial and in post-trial motions.  However, he fails to provide any additional argument or evidentiary support for this claim.  Thus, the court is left to assume that this claim concerns the alleged *Brady* violation grounded in Ms. Cummings' mental health and drug abuse history, which was fully litigated in Defendant's post-trial motion and his direct appeal.  Consequently, he cannot re-litigate that substantive issue in this collateral proceeding.

Moreover, Defendant has not sufficiently demonstrated that he suffered undue prejudice from how Tinney addressed the *Brady* issue during trial or in the post-trial motion.  Thus, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not established ineffective assistance of counsel in violation of his Sixth Amendment rights on this basis and he is not entitled to any collateral relief on Ground Two of his amended section 2255 motion.

### C.      Defendant has not demonstrated that he is not a career offender.

In Ground Three of his amended motion (ECF No. 204 at 6), Defendant contends that Tinney failed to contest his career offender status at sentencing on the basis that his prior drug conviction was over 10 years old.  However, the applicable career offender guideline provisions do not include any such limitation.  As discussed above in footnote 3, a defendant who was at least eighteen years old at the time of a felony conviction for either a crime of violence or a controlled substance offense, and who has at least two prior

felony convictions of either a crime of violence or a controlled substance offense, is a career offender. UNITED STATES SENTENCING GUIDELINES MANUAL § 4B1.1(a) (U.S. SENTENCING COMM'N 2011).  Defendant's prior convictions for possession with intent to distribute cocaine and wanton endangerment with a firearm qualify as predicate offenses for the career offender enhancement.  Although wanton endangerment with a firearm may not satisfy the force clause, *see United States v. Sumpter*, No. 2:15-cv-00067, 2016 WL 398223 (Jan. 6, 2016), it would still satisfy the residual clause of the career offender guideline, which has not been found to be void for vagueness.  *See Beckles*, *supra*, 137 S. Ct. at 892.

Additionally, section 4A1.2(e)(1), which defines how prior convictions count toward a defendant's criminal history calculation, provides that "any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." UNITED STATES SENTENCING GUIDELINES MANUAL § 4A1.2(e)(1) (U.S. SENTENCING COMM'N 2011).  This appears to be the only relevant time limitation applicable to the circumstances presented by Defendant, and his controlled substance offense meets these criteria.

Therefore, because Defendant's prior controlled substance offense was properly categorized as a predicate felony controlled substance offense for the career offender enhancement, Defendant cannot demonstrate that Tinney's conduct, in failing to challenge the enhancement on this basis, fell below an objective standard of reasonableness, or that Defendant suffered undue prejudice therefrom.  Consequently, Defendant has not established ineffective assistance of counsel in violation of his Sixth Amendment rights on this basis and he is not entitled to any collateral relief on Ground Three of his amended section 2255 motion.

**D.  Various claims addressed in Ground Four.**

In Ground Four of his amended section 2255 motion, Defendant asserts that Tinney provided ineffective assistance of counsel in several other ways.  First, he asserts that Tinney failed to engage an expert(s) concerning "voice recognition" and "triangulation" of cell phones, which he asserts would have supported his claim that he was not involved in the January 18, 2012 controlled buy and the phone call arranging the same.  However, Defendant has not provided any specific evidence about what testimony such experts would have offered.

Moreover, in light of the testimony of Angel Cummings and Detectives Allen and Hackney, who were eye witnesses to the controlled buy, and who were able to identify Defendant as the person they witnessed engaging in that transaction, there was other sufficient evidence from which a jury could reasonably find that Defendant was the person who engaged in the controlled buy on January 18, 2012, which was the offense conduct supporting the sole distribution count of which Defendant was convicted.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated the requisite prejudice to establish a Sixth Amendment violation on this basis.

Additionally, Defendant asserts that Tinney was ineffective because he failed to move for a mistrial or object to references made by Detective Allen concerning Defendant's prior incarceration and a prior seizure of drugs from his home.  As noted above, Defendant characterizes this as "other bad acts" character evidence that was presented to the jury without any limiting instructions from the court.  However, brief references to a defendant's incarceration will not rise to the level of a due process violation.  *See United States v. Villabona-Garnica*, 63 F.3d 1051, 1058 (11th Cir. 1995).

Rather, such references "must be pervasive and frequent enough to serve as a 'constant reminder' to the jury that the defendant is or has been a prisoner before they will rise to the level of a due process violation." *United States v. Falciglia*, No. 09-120, 2010 WL2408153, *9 (W.D. Pa. June 7, 2010); *see also Estelle v. Williams*, 425 U.S. 501, 504-05 (1976); *United States v. Faulk*, 53 F. App'x 644, 648 (3d Cir. 2002); *United States v. Atencio*, 435 F.3d 1222, 1237 (10th Cir. 1995) ("mere utterance of the words jail, prison, or arrest does not amount to a constitutional violation.").

Here, the references to Defendant's phone calls made while in jail or prison and the singular reference to a previous seizure of drugs from Defendant's home were not pervasive enough to rise to the level of a due process violation. Thus, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that Tinney's failure to move for a mistrial, or in any way challenge these discrete references, fell below an objective standard of reasonableness and, given the sufficient other evidence to support Defendant's conviction on the singular distribution count, did not result in undue prejudice. Accordingly, Defendant is not entitled to any relief on this claim.

Finally, to the extent that Defendant also asserted that Tinney did not allow him to testify at trial, that claim is wholly unsupported and Defendant has not demonstrated how his testimony would have aided his defense. Thus, Defendant has failed to show that, but for counsel's alleged error, a reasonable probability exists of a different result. For all of these reasons, the undersigned proposes that the presiding District Judge **FIND** that Defendant is not entitled to any collateral relief on the claims asserted in Ground Four of his amended section 2255 motion.

The record herein demonstrates that Tinney zealously advocated for Defendant and successfully reduced the charges and sentencing exposure he was facing, notwithstanding the evidence against him. Thus, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not overcome the high burden of establishing ineffective assistance of counsel under the Sixth Amendment.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence (ECF Nos. 191 and 204) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on the opposing party and Judge Chambers.

The Clerk is requested to mail a copy of this Proposed Findings and Recommendation to Defendant at FCI Williamsburg, where he is now incarcerated, and to transmit a copy to counsel of record.

September 23, 2019

Dwane L. Tinsley
United States Magistrate Judge